*Administrative Office of the Courts, et al. v. Abell Foundation*
No. 48, September Term 2021


**Maryland Public Information Act – Rules on Access to Court Records – Administrative Records – Code Key for Public Access Database.**   An important common law principle provides that court proceedings and records are presumptively open to the public.  In the Maryland Public Information Act ("PIA"), the General Assembly has established a policy that public records that are clearly disclosable should be made available for public inspection without unnecessary cost or delay.  The Court of Appeals has adopted rules governing access to judicial records, including case records and administrative records, that reflect the longstanding principle of the openness of case records and generally treat administrative records in a way similar to the treatment of Executive Branch records under the PIA.  Consistent with the principle of openness of case records and the policy of ready public access to records that are clearly disclosable, the Maryland Judiciary has developed an online database known as Case Search that makes available to the public basic information about filings and proceedings in cases in Maryland courts.  While the identity of the judge who presided in a case or decided a matter – which is clearly disclosable under the PIA and Access Rules – appears generally in records of case events in Case Search, the names of judges on the District Court in Baltimore City are indicated only by an alphanumeric code.  The code key that matches the alphanumeric codes to judges on that court is disclosable in response to a public records request and is not exempt from disclosure under an exception for certain administrative records.

Circuit Court for Baltimore City
Case No. 24-C-18-005684
Argument: April 4, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 48

September Term, 2021

ADMINISTRATIVE OFFICE OF THE COURTS,
ET AL.

v.

ABELL FOUNDATION

*Getty, C.J.,
Watts
Hotten
Booth
Biran,
Harrell, Glenn T., Jr.
  (Senior Judge, Specially Assigned)
McDonald, Robert N.
  (Senior Judge, Specially Assigned),

JJ.

Opinion by McDonald, J.
Hotten and Biran, JJ., dissent.

Filed: July 28, 2022

*Getty, C.J., now a Senior Judge, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

 Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

One who attends a major league baseball game can generally know the names of the players, as they are printed on the backs of their uniforms. One team is an exception to this general rule.[1] In that case, one must buy a scorecard that contains a key that relates the number on a player's uniform to the player's name.

An analogous situation exists for one who accesses information about Maryland judicial proceedings reported in an online database known as Case Search. That database, which is overseen by Petitioner Administrative Office of the Courts ("the AOC"), provides ready and convenient public access to information about court proceedings and records that are indisputably open to the public. For cases in many courts, the judge who presided over the particular proceeding is identified in Case Search. However, for cases in the District Court sitting in Baltimore City, the judge is identified only by an alphanumeric code. The clerks who enter the information from paper records into the digital database have a code key – the equivalent of a baseball scorecard – that assigns each judge a code. However, that code key does not appear in Case Search – or apparently anywhere else that is accessible to the public. One who accesses the report of a particular proceeding in that court on Case Search sees only the code for the judge.

---

[1] The New York Yankees do not print the names of players on the backs of jerseys. The Boston Red Sox are a partial exception: no names appear on the backs of jerseys worn in Boston; names appear on the jerseys worn when the team plays elsewhere.

In July 2018, Respondent Abell Foundation ("Abell") requested a copy of the code key from the AOC under the Maryland Public Information Act. The AOC declined to provide that document, citing a Maryland Rule that states an exception to disclosure for certain types of "administrative records." This litigation ensued.

Everyone agrees that the information in the code key sought by Abell was not, and is not, confidential and is available elsewhere. The name of a judge who presided at a particular proceeding in the District Court is publicly available in paper or electronic files at the courthouse; the alphanumeric code associated with that judge appears in the Case Search entry for the proceeding. One who is willing to both visit the courthouse and access Case Search online can associate the two. This case concerns whether the record containing the code key itself falls under the exception from public access in the Maryland Rules cited by the AOC.

The Circuit Court and the Court of Special Appeals concluded that the exception did not apply to the code key. We agree. Every version of the Maryland Rules governing access to court records – as we shall see, those rules have been revised several times over the last two decades, even after this controversy arose – has begun from the principle that a judicial record relating to court proceedings is presumed to be open to inspection by a person who asks for it unless shielding or sealing it is necessary to protect legitimate privacy rights or security. That premise reflects the common law principle that judicial proceedings, records, and documents are open to public view unless a statute, rule, or decision by this Court provides otherwise.

2

# I

## Background

### A. *Public Access to Judicial Records*

#### 1. Traditional Openness of Court Records

There is a longstanding tradition of access to court proceedings and records under the common law in Maryland, and in the United States generally. *See Baltimore Sun Co. v. Mayor & City Council*, 359 Md. 653, 660 (2000) (holding that sealing order violated "common law principle of openness regarding public access to court proceedings and records"); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-99 (1978). In particular, "there is a common law right to inspect and copy judicial records and documents." *Baltimore Sun Co. v. Colbert*, 323 Md. 290, 305 (1991).

The traditional openness of court records is based in part on "the citizen's desire to keep a watchful eye on the workings of public agencies." *Nixon*, 435 U.S. at 598. There is also the more general notion that records of court proceedings are "public property" for which "[t]here is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it." *Mayor & City Council*, 359 Md. at 663 (*quoting Craig v. Harney*, 331 U.S. 367, 374 (1947)).

The principle of public access to court proceedings and records is often contrasted with the secretive practices attributed to the Star Chamber, a court created by the Tudor kings of England that has been associated with abusive and overbearing prosecutorial

3

practices, compelled testimony from criminal defendants, and religious persecution. *E.g.,*

*Tharp v. State*, 362 Md. 77, 93-94 & n.9 (2000); *Carter v. State*, 356 Md. 207, 214-18

(1999); *see also* Frank Reibli, *The Spectre of Star Chamber: The Role of an Ancient*

*English Tribunal in the Supreme Court's Self-Incrimination Jurisprudence*, 29 Hastings

Const. L.Q. 807 (2002) (arguing that the Star Chamber did not operate differently from

most courts of its day).

The traditional principle that court proceedings and records are open to the public

is, of course, subject to exceptions such as "where court files might have become a vehicle

for improper purposes." *Nixon*, 435 U.S. at 598 (referring to disclosure of private details

in a divorce case or business information that might harm an entity's competitive standing).

2. Maryland Public Information Act

The Maryland Public Information Act ("PIA"), codified at Maryland Code, General

Provisions Article ("GP"), §4-101 *et seq*., generally governs access to public records of

"units and instrumentalities" of the State, including the Judiciary.[2]  For purposes of the

PIA, a "public record" encompasses "documentary material … made … or received by the

unit or instrumentality in connection with the transaction of public business…."  GP §4-

101(k)(1).  The PIA provides a broad right of access to public records without unnecessary

cost or delay.  GP §4-103 (right of access to information "about the affairs of government

---

[2] The PIA was originally enacted in 1970.  Chapter 698, Laws of Maryland 1970.
Like other public records laws enacted around the country during that era, it was intended
to expand public access to government records.  *See* Office of the Attorney General, Public
Information Act Manual (2021) at 1, available at https://perma.cc/BJF3-D3FD.

and the official acts of public officials" with the "least cost and least delay" unless there would be an "unwarranted invasion of privacy"). The PIA recognizes various exceptions to the general right of access to public records. Some of those exceptions are mandatory – that is, the custodian of the record is forbidden from disclosing the record.[3] Other exceptions are discretionary or conditional – in the sense that the custodian must exercise judgment whether specific records or information satisfy a condition set forth in the statute for being withheld from disclosure.[4]

In delineating access to public records, the PIA defers to other law.[5] One category of other law to which the PIA explicitly defers is "rules adopted by the Court of Appeals." GP §4-301(a)(2)(iii) (providing generally that "a custodian shall deny inspection of a public record" when the inspection "would be contrary to: … the rules adopted by the Court of Appeals"). Such deference is consistent with the constitutional authority of the Court of Appeals to adopt "rules and regulations … concerning the … administration of [the courts], which shall have the force of law until rescinded, changed or modified by the Court

---

[3] *E.g.,* GP §4-305 (mandatory denial for records "that relate to the adoption of an individual"); GP §4-311 (mandatory denial, with certain exceptions, for a "personnel record of an individual").

[4] *E.g.,* GP §4-345 (custodian of examination information relating to licenses or academic matters "may deny inspection" of test questions and scoring keys); GP §4-351 (custodian of record of law enforcement investigation "may deny inspection" in certain circumstances).

[5] *See, e.g.,* GP §4-301(a)(2) (custodian of record to deny access if "inspection would be contrary" to various categories of laws); GP §4-304 (inspection of certain records to be denied "[u]nless otherwise provided by law" – *i.e.,* inspection to be allowed if other law so provides).

of Appeals or otherwise by law." Maryland Constitution, Article IV, §18(a); *see Murphy v. Liberty Mutual Insurance Co.*, 478 Md. 333, 341-42 (2022). Thus, Maryland Rules concerning whether a Judiciary record is accessible would supersede anything in the PIA that would appear to provide to the contrary.[6]

If a custodian of a public record denies access to the record, the PIA provides that the person asking to inspect the record may pursue judicial review of that decision in a circuit court. GP §4-362.

### 3. Maryland Rules on Access to Court Records

This Court has adopted rules governing access to court records. Maryland Rules 16-901 *et seq*. ("Access Rules"). As the PIA acknowledges, the Access Rules govern a decision by a custodian of judicial records whether to allow access to particular public records.

The Access Rules have undergone a number of revisions since their initial adoption in 2004.[7] One of the peculiarities of this case is that the Access Rules not only have been amended and re-codified several times over the past 18 years, but also have been re-codified and revised in the short period of time since this case began. Pertinent to this case is the version of the rules that existed as of July 2018, when Abell submitted the records request that resulted in this case. Accordingly, unless otherwise indicated, all references

---

[6] We need not, and do not, decide whether the Maryland Rules may constitutionally supersede a statutory remedy provided under the PIA.

[7] *See* Part II.B.3 of this opinion.

to the Access Rules in this opinion are to the rules in effect at that time. We shall do our best to acknowledge the later developments by footnote or otherwise, but the reader is forewarned that the application of this decision in the future may require some analysis of those developments.

As of July 2018, former Maryland Rule 16-901(a) provided that, "[e]xcept as expressly provided or limited by other Rules, the Rules in this Chapter govern public access to judicial records[.]" At that time, former Maryland Rule 16-903 stated both the overall intent of the Access Rules "to provide public access to judicial records while protecting the legitimate security and privacy rights of litigants and others who are the subject of those records," and the presumption that judicial records are "open to the public for inspection." Former Maryland Rule 16-903(a), (b).[8]

Former Maryland Rule 16-902 classified the records held by the Judicial Branch into five categories – case records, administrative records, business license records, notice records, and records of certain court-related agencies. Former Maryland Rule 16-902(h). As pertinent here, "case record" was defined broadly to include "all or any portion" of a record, whether in paper, electronic, or other format "that is made, entered, filed, or

---

[8] The presumption is now stated in current Maryland Rule 16-904 ("Judicial records are presumed to be open to the public for inspection"), and the overall intent of the Access Rules is now stated in current Maryland Rule 16-902(b) ("The intent of this Chapter is to (1) adopt comprehensive principles ... that will maintain the traditional openness of judicial records, subject only to such shielding or sealing that is necessary to protect supervening rights of privacy, safety, and security ....").

maintained by the clerk of a court in connection with an action or proceeding." Former

Maryland Rule 16-902(c).

The rule defined an "administrative record," in relevant part, as a record that "is not

a case record" and that "pertains to the administration of a court, a judicial agency, or the

judicial system of the State." Former Maryland Rule 16-902(a)(1). The rule then listed

examples of such records. Former Maryland Rule 16-902(a)(2).[9]

---

[9] Those examples included the following:

(A) a rule adopted by a court pursuant to Rule 1-102;
(B) an administrative order, policy, or directive that governs the operation of a court or judicial agency;
(C) an analysis or report, even if derived from judicial records, that is:
    (i) prepared by or for a court or judicial agency;
    (ii) used by the court or judicial agency for purposes of judicial administration; and
    (iii) not filed, and not required to be filed, with the clerk of a court.
(D) judicial education materials prepared by, for, or on behalf of a unit of the Maryland Judiciary for use by Maryland judges, magistrates, or other judicial personnel;
(E) a jury plan adopted by a court;
(F) a case management plan adopted by a court;
(G) a continuity of operations plan;
(H) an electronic filing plan adopted by a court;
(I) an administrative order issued by the Chief Judge of the Court of Appeals pursuant to Rule 16-903;
(J) policies, procedures, and plans adopted or approved by the State Court Administrator, the Court of Appeals, or the Chief Judge of that Court pursuant to a Maryland Rule or a statute; and
(K) judicial or other professional work product, including drafts of documents, notes, and memoranda prepared by a judge or other Judicial Branch personnel at the direction of a judge or other judicial official and intended for use in the preparation of a decision, order, recommendation, or opinion.

8

The rules set forth, for each category of record, the bases on which a custodian of such records was required, or had discretion, to deny inspection of a record. The exceptions to disclosure for case records adopted in some respects, and elaborated in other respects, the exceptions from disclosure under the PIA. Former Maryland Rules 16-906 through 16-908.

The exceptions to disclosure related to administrative records also adopted exceptions similar to those set forth in the PIA, and added other exceptions peculiar to the Judiciary. Former Maryland Rule 16-905. In particular, former Maryland Rule 16-905(c) provided: "Except as otherwise provided by the [Access Rules], the right to inspect administrative and business license records is governed by the applicable provisions of [the PIA]." Former Maryland Rule 16-905 then gave specific instructions as to the disclosure of special judicial unit records, jury selection records, and personnel records, and, in two parts of section (f), judicial work product and judicial education materials. *See* former Maryland Rule 16-905(b) - (f)(2). Particularly pertinent to this case is the third subsection of former Maryland Rule 16-905(f), which provided that a custodian "shall" deny inspection of:

(3) an administrative record that is:

 (a) Prepared by or for a judge or other judicial personnel;

 (b) Either (i) purely administrative in nature but not a local rule, policy, or directive that governs the operation of the court or (ii) a draft of a document

---

Former Maryland Rule 16-902(a)(2). In a somewhat amended form, these examples now appear in current Maryland Rule 16-903(b)(2).

intended for consideration by the author or others and not intended to be final in its existing form; and

   (c) Not filed with the clerk and not required to be filed with the clerk.

Former Maryland Rule 16-905(f)(3). For ease of reference, in this opinion we shall refer to this mandatory exception to disclosure as "subsection (f)(3)."[10]

## B.    *Case Search*

The Maryland Judiciary website describes Maryland Judiciary Case Search – generally known simply as "Case Search" – as "the primary way that the public may search for records of court cases."[11] It is an online database that allows a member of the public to look up information about civil and criminal cases in Maryland trial and appellate courts. The AOC manages Case Search.

Case Search does not contain, and is not a means of accessing, the pleadings, papers, orders, and other documents filed in a case. The Judiciary provides access to those records via a database that a member of the public may access at the computer terminals provided for that purpose at a courthouse in any county.

Rather, Case Search provides a summary of a case's history that consists of a list of case events and filings, denominated in some instances by abbreviations and codes, and

---

[10] The same exception, in the same language, is now located in current Maryland Rule 16-913(d).

[11] *See* https://mdcourts.gov/legalhelp/courtrecords ("[Case Search] is the primary way that the public may search for records of court cases. The information in Case Search is a summary of what is contained in the official case file. Case Search is a good way to get some general information about a case such as the case number, dates, and type of case."). Also available at https://perma.cc/2YQW-EBX5.

the identities of the parties, attorneys, and, in many instances, the judge who presided over or decided the matter. Cases may be found through searches based on the case number or on the names of parties or attorneys. Searches can be refined to some extent by time period, jurisdiction, and type of case.

The FAQs on the Case Search webpage explain various components of the entries and abbreviations in those entries. For example, for a criminal case, INIT denotes an initial appearance and BALR denotes a bail review proceeding.[12] Documents posted on the webpage provide translations for various "event codes" for different types of cases.

A review of the Case Search FAQs and random case histories suggests that use of codes in the database in 2018 was not always consistent. An example given in the FAQs indicates that a four-digit code denotes a "commissioner/judge id#."[13] However, it appears that a circuit court judge presiding over a particular case event is identified by name, not code. It also appears that, although the District Court is a unified court system, the District Court clerks did not have a uniform practice as to whether a name or a code was entered as to each event in which a judge played a role.[14] For entries relating to cases in the District

---

[12] *See* https://perma.cc/9JCE-ECZH.

[13] As we shall see, the record in this case indicates that District Court judges are each assigned a three-digit alphanumeric code. It is possible that the four-digit code in the FAQ example denoted a commissioner rather than a District Court judge.

[14] The fact that the practices varied among various jurisdictions in 2018 is illustrated by the variety of formats in which case histories were entered, the varying contents of the entries, and the list, on the Case Search FAQs page, of the different years for which the records from each jurisdiction can be searched.

Court sitting in Baltimore City, the name of the judge did not appear; instead, a code might appear for some, but not all, events in which a judge would have presided or issued a decision.

The records that are publicly available at a courthouse generally show the name of a judge associated with a case – for example, in a criminal case, the name of a judge who presided over events such as a bail review, a trial, or a sentencing proceeding. The identity of a District Court judge identified only by a code in Case Search, or not identified at all in Case Search, can thus be ascertained by consulting the paper or digital records available at a courthouse.

The Access Rules, as they existed in July 2018, did not directly classify Case Search or related records into one of the five categories of judicial records. However, the definition of "remote access" stated that "[r]emote access to *case records* means access through the Case Search program operated by the [AOC]." Former Maryland Rule 16-902(k)(2) (emphasis added).[15] Thus, of the five categories of records defined in the Access Rules, the category most relevant to Case Search entries would appear to be "case record," as Case Search summarizes and reports filings and proceedings in court.

---

[15] That rule was later re-codified as current Maryland Rule 16-903(a)(2)(B) and amended to include a reference to MDEC (the Maryland Electronic Courts system), as well as Case Search.

*C.*     ***Facts and Proceedings***

1.     Abell Requests a Copy of the Code Key

On July 20, 2018, Abell sent the Public Information Officer of the AOC a written request for the "list of unique identifiers assigned to judges serving in the District Court [in] Baltimore City" that were "used to identify individual district court judges in the Maryland Judiciary Case Search Database."  Abell stated that it was seeking the list "[u]nder the Maryland Public Information Act [.]"[16]  We shall refer to the record sought by Abell as the "code key" as it would provide the key to the list of codes in Case Search for identifying a judge who presided at a proceeding in the District Court in Baltimore City.

2.     The AOC Denies Abell's Records Access Request

On July 25, 2018, the AOC's Assistant Administrator for Government Relations and Public Affairs denied the request.  Her letter explained that the Maryland Rules "primarily" governed the request, and that the PIA would apply "to the extent it is expressly adopted by and consistent with the Access Rules."  She then explained that "[a]ny unique identifier assigned to an individual judge" would be considered an "administrative record" under then-Maryland Rule 16-902 and that the disclosure of the record was therefore subject to the mandatory exclusions for certain administrative records stated in then-Maryland Rule 16-905 – specifically, in subsection (f)(3) of that rule.  She advised Abell

---

[16] In its brief to us, Abell states that it made its request for the code key as a result of an instance in which it was looking up the disposition of a specific case in the District Court and could not determine the identity of the judge who decided that case.  Abell has not specified the case in question.

that it could seek judicial review of her decision pursuant to GP §4-362, the judicial review provision of the PIA.

3.  Abell Seeks Judicial Review of the Denial

In October 2018, Abell sought judicial review of the AOC's denial of its records request by filing suit under GP §4-362 in the Circuit Court for Baltimore City. Abell amended its complaint in May 2019. The AOC answered the amended complaint and filed a motion for summary judgment several months later.[17] Abell filed a cross-motion for summary judgment, which the AOC opposed.

In support of its opposition to Abell's motion, the AOC submitted an affidavit by Polly Harding, the Director of the District Court's Administrative Services Department. In that affidavit, Ms. Harding stated that, when a new District Court judge is appointed, Ms. Harding or staff in her department assigns to that judge a "unique three-digit alphanumeric code" that clerical staff then use when entering information into the District Court's mainframe system. She described that system as an "electronic legacy case management system" that is being used by the District Court in Baltimore City until it transitions to MDEC, the statewide electronic filing and case management system.

Ms. Harding further stated that the alphanumeric code identifiers, which had been in use "before the advent of Case Search," are "placed into a mainframe edit table"

---

[17] In addition to the AOC, Abell also named as defendants certain AOC officials in their official capacities. The Circuit Court granted motions to dismiss as to the individual defendants. Several other motions, not pertinent to the issue before us, were filed and resolved in the Circuit Court.

maintained by her unit and that she was the custodian of the "edit table." Apparently to relate this code key to the exception for certain administrative records in subsection (f)(3) of the Access Rules, she stated that the edit table "is maintained purely for administrative purposes"; "is not … filed with the Clerk"; is used to enter docket events "efficiently" into the mainframe system; "in part enables the mainframe system to account for judges that share the same last name"; and "is not a local rule, policy, or directive." It is not clear from Ms. Harding's affidavit whether the "edit table" encompasses other information beside a code key for the alphanumeric codes identifying judges.[18]

Neither party submitted any other affidavits or other evidence, although they argued various points based on information on the Case Search webpage.

4. The Circuit Court Awards Summary Judgment in Favor of Abell

After conducting a hearing on pending motions, the Circuit Court granted Abell's motion for summary judgment on October 30, 2019. In its memorandum opinion, the court stated preliminarily that the "[r]ecords of the Judiciary … are subject to the PIA," but that the PIA in turn prohibits disclosure if public inspection would be "contrary to" the Maryland Rules. Next, the court determined that the "edit table" was an "administrative record" under then-Maryland Rule 16-902(a)(1). In the Circuit Court's view, the only question was whether the AOC had correctly determined that this code key satisfied the

---

[18] The AOC did not submit a copy of the "edit table," either with Ms. Harding's affidavit or *in camera* for the Circuit Court, and apparently no request was made that it do so. The edit table to which she referred does not otherwise appear in the record of this case.

three prongs of the exception related to administrative records set forth in subsection (f)(3).[19] The court found that the edit table easily met both the first prong – that the record had been prepared by "a judge or other judicial personnel" – and the third prong – that the record was not required to be, and had not been, filed with the clerk.

As to the second prong, the court concluded that the matter turned, in the words of the rule, on whether the record in question was "purely administrative in nature but not a local rule, policy or directive that governs the operation of the court." Former Maryland Rule 16-905(f)(3)(B)(i).[20] The Circuit Court concluded that the edit table did not fall within that provision because "it functions as 'a local rule, policy, or directive that governs the operation of the court.'" Citing the Harding affidavit, the court noted that "it is easier and potentially more accurate for personnel in the various clerk's offices to enter these codes rather than to type in the names of individual judges." That practice, the court concluded, "is a uniform administrative practice of the District Court – part of its administrative policies and directives – and the edit table itself is an integral part of implementing that policy or directive."

The court also noted that the Judiciary had posted online a translation of other codes used in case histories and that it had not provided a basis to distinguish between that

---

[19] As indicated above, that exception now appears in current Maryland Rule 16-913(d).

[20] A separate sub-prong of the second prong protecting certain draft documents from disclosure – former Maryland Rule 16-905(f)(3)(B)(ii) – did not apply, as the AOC did not contend that the edit table was a draft.

"operational, policy, practice, or directive" and the non-disclosure of the "edit table," which functioned as a similar key to Case Search. The court held that subsection (f)(3) did not require the AOC to withhold the code key, and granted Abell's motion for summary judgment.

5.    Appeal

The AOC appealed. The Court of Special Appeals affirmed on reasoning similar to that of the Circuit Court. 252 Md. App. 261 (2021). The intermediate appellate court rejected the AOC's argument that the code key was not a "local policy, rule, or directive," reasoning that it embodied a policy decision to display the codes on Case Search instead of judges' names and, in that way, served as a policy or directive that "governs the operation of the court." 252 Md. App. at 269. The intermediate appellate court further observed that the "only tangible manifestation" of the policy was the "edit table" itself, so that limiting the AOC's disclosure obligations to only those records that expressly stated a local rule, policy, or directive would be contrary to the general presumption of the PIA and Access Rules in favor of disclosure. *Id.* at 270-71. In a footnote, it suggested that, if there had been "a memo or some other tangible manifestation of the policy," the edit table itself might then fall within the exception in subsection (f)(3). *Id*. at 270 n.3.

We granted AOC's petition for a writ of *certiorari* to address the application of subsection (f)(3) to Abell's request.

## II

### Discussion

The facts are undisputed, although that does not mean that they are unambiguous. For example, in her affidavit, Ms. Harding states that the information relating the alphanumeric code to the names of judges is "placed into a mainframe edit table." It is unclear whether the edit table in question simply equates to a code key for judges' names or encompasses other types of information.

Similarly, while the parties agree that, as of July 2018, for cases in the District Court sitting in Baltimore City, Case Search identified the judge presiding over, or deciding, a matter by alphanumeric code rather than by name, it is not clear on the record of this case to what extent Case Search entries for cases in other jurisdictions supply the name, a code, or nothing at all to identify the presiding judge. A random review of entries on Case Search for 2018 does not reveal a consistent pattern.

These ambiguities are puzzling, but they do not impede us from reaching the legal issue before us and resolving this case. Abell seeks only a list of Case Search identifiers for judges in the District Court in Baltimore City – what we are referring to as the code key. The AOC does not dispute that what it has, and could produce, is a record that would satisfy that request. In the AOC's view, the impediment to doing so is the mandatory exception to disclosure in subsection (f)(3).

In a certain respect, the dispute over the application of subsection (f)(3) to the code key appears to be more one of principle than practical result. The AOC agrees that the

identity of a judge who presides over a particular matter in the District Court in Baltimore City is not a secret. Indeed, it points out that anyone who wishes to learn the identity of a judge presiding over a particular matter is free to go to the courthouse and obtain the answer there. And the AOC displays the alphanumeric code for that judge in the Case Search entry for the proceeding. So, with a bit of legwork, a member of the public could replicate the code key that matches judges' names with alphanumeric codes. Yet the AOC takes the position that the plain meaning of subsection (f)(3) – as it existed in 2018 – expressly forbade it from disclosing the code key itself.

For its part, Abell does not dispute that the code key is an "administrative record" for purposes of the Access Rules and that many administrative records of the Judiciary can be withheld from public disclosure. Nor does it dispute that it could learn the name of the judge involved in a particular case by going to the courthouse, yet it insists on obtaining a copy of the code key. It cites general propositions concerning the openness of court records and advocates for a construction of subsection (f)(3) that would allow disclosure of the code key.

## A. *Standard of Review*

When it denied Abell's request for access to the code key, the AOC relied on the exception in subsection (f)(3) relating to certain administrative records. The Circuit Court and the Court of Special Appeals came to a different conclusion than the AOC about the interpretation of that exception. This is a purely legal question on which we accord no

special deference to the decisions of the Circuit Court or the Court of Special Appeals. *Scarfield v. Muntjan*, 444 Md. 264, 270-71 (2015).

**B.      *Whether the Mandatory Exception in Subsection (f)(3) Applies to the Code Key***

The parties have not briefed the question whether the code key is an administrative record.[21]  We will accept the apparent assumption of the parties that it is and that this case turns on the interpretation of the exception to disclosure of administrative records in subsection (f)(3).  The question then is whether that mandatory exception required the AOC custodian to deny Abell's request for a copy of the code key.

The Maryland Rules are construed according to the same principles as statutes and other enactments.  *Lisy Corp. v. McCormick & Co., Inc.*, 445 Md. 213, 221 (2015).  One begins with the text of the rule and gives the relevant words their ordinary meaning in the

---

[21] The question is not whether the code key is an "administrative record" in a colloquial sense.  This Court has repeatedly stated that the Maryland Rules are "precise rubrics" that are to be "strictly followed."  *E.g., General Motors Corp. v. Seay*, 388 Md. 341, 344 (2005).  The category of "administrative records" is not a catch-all category in the Access Rules, but rather one with a specific definition set out in former Maryland Rule 16-902(a).  There may be an argument that the code key does not fit the definition in that rule.  It is not among the specific examples of administrative records listed in subsection (a)(2).  *See* footnote 9 above.  Under the more general language of subsection (a)(1), the question is whether the code key both "pertains to the administration of [the District Court]"and "is not a case record."  Nothing in the record of this case indicates that the code key is used in the administration of that court other than as a tool to input data from paper case records into the database that provides what is defined as "remote access" to case records – Case Search.  The code key may not, strictly speaking, be a case record itself, but it is not unlike the court forms and instructions that make up and are necessary to make intelligible many court filings.  To the extent that the code key would be regarded as part of a case record, there is no exception for access to *case records* that would require, or even allow, the code key to be withheld in response to a records request.

context of the rule as a whole and the larger set of rules of which that rule is part. If there is ambiguity in either the language itself or its application to the circumstances at hand, the history of the adoption of the rule can be instructive as to the purpose of the rule. In addition, one may look to the ramifications of the possible alternative interpretations of the language in question. *Cf. Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 169-70 (2021) (outlining similar approach to construction of statutes).

1.      Text of Subsection (f)(3)

As previously noted, subsection (f)(3) required a records custodian to withhold from disclosure an administrative record that is:

(a) Prepared by or for a judge or other judicial personnel;

(b) Either (i) purely administrative in nature but not a local rule, policy, or directive that governs the operation of the court or (ii) a draft of a document intended for consideration by the author or others and not intended to be final in its existing form; and

(c) Not filed with the clerk and not required to be filed with the clerk.

This is not an easy exception to the general principle of openness for anyone to apply. First, as the Circuit Court noted, it consists of three prongs that all must be satisfied for the exception to apply. But two of those prongs contain "sub-prongs" – one phrased in the conjunctive and the other in the disjunctive – which are stated in the negative. In other words, in the course of determining whether all three prongs are met, the custodian must make sure that certain things are *not* true. The provision is elegant in its logic, but less so in its practical application. The AOC Assistant Administrator might be forgiven for reaching a different conclusion than we do as to its breadth.

Compounding a custodian's dilemma is the fact that this is a *mandatory* exception – if the exception applies, the custodian has no discretion, but must deny disclosure of the record. A conscientious custodian may well feel conflicted in being faithful, on the one hand, to the general principle that court records are open and, on the other, to the command of a mandatory exception that the custodian may not disclose a record.

Luckily for us, at this stage of the case, just a few words in subsection (f)(3) appear to be at issue. Everyone seems to agree that the first and third prongs are satisfied – that is, the code key is "prepared by or for … judicial personnel" and is not filed, or required to be filed, with the clerk. In addition, no one contends that the code key is a "draft" or a local rule. The only point of dispute is whether the code key is a "policy[] or directive that governs the operation of the court" – in which case the exception in subsection (f)(3) would not apply – or is not a "policy or directive" – in which case the exception would apply.[22]

Both the Circuit Court and the Court of Special Appeals concluded that the code key was the functional equivalent of a policy and therefore that the exception did not apply. The AOC argues that those courts adopted a strained reading of the word "policy" to extend it to a list of codes and names.

---

[22] There is a grammatical ambiguity in the first half of the second prong of subsection (f)(3): Does the final phrase "that governs the operations of the court" modify all of the items in the list that precedes it – *i.e.*, "local rule," "policy," and "directive," – or just the last one ("directive")? As the definition of "administrative record" starts from the premise that it "pertain[s] to the administration of a court ... or the judicial system" (former Maryland Rule 16-902(a)(1)), and thus to operations of a court, the final qualifying phrase presumably applies to all three items in the list.

The word "policy" has several ordinary meanings, depending on context, a number of which clearly do not apply here. In some contexts, for example, it refers to an insurance policy or numbers game. More generally, the American Heritage College Dictionary (3rd ed. 1993), which orders the definitions of a word by the most "central," p. xxv, defines "policy" primarily as "[a] plan or course of action, as of a government, political party, or business, intended to influence and determine decisions, actions, and other matters" and secondarily as "[a] course of action, guiding principle, or procedure considered expedient, prudent or advantageous." *Id*. at p. 1058. The Merriam-Webster online dictionary offers slightly different definitions. The three most potentially relevant ones are "management or procedure based primarily on material interest"; "a definite course or method of action selected from among alternatives and in light of given conditions to guide present and future decisions"; and "a high-level overall plan embracing the general goals and acceptable procedures especially of a governmental body."[23]

A "directive," according to the American Heritage College Dictionary is "an order or instruction, esp. one from a central authority." *Id*., p. 393. According to the Merriam-Webster online dictionary, it is "something that serves to direct, guide, and usually impel

---

[23] "Policy", *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/policy, available at https://perma.cc/F7GV-28HT.

23

toward an action or goal especially government: an authoritative order or instrument issued by a high-level body or official…." [24]

If these dictionary definitions were to govern the interpretation of subsection (f)(3), it would seem that a list of names and corresponding codes is not in itself a "directive" in the ordinary sense of that word, as it neither issues an order nor gives an instruction. Whether the code key is a "policy" poses a much closer question. Arguably, it meets both the American Heritage College Dictionary's second definition of a "policy" as a "procedure considered expedient, prudent or advantageous" and Merriam-Webster's definitions of "policy" as a "procedure based primarily on material interest" or a "method of action selected from among alternatives . . . to guide present and future decisions." Nonetheless, while the dictionaries are somewhat informative on what subsection (f)(3) might ordinarily mean, they do not establish a clear meaning of the word "policy" as applied to the code key, which, in and of itself, neither sets a procedure for its use nor requires its use. We therefore look more broadly to the purpose and history of subsection (f)(3) – and the Access Rules of which it is a part.

2. Finding the History of a Maryland Rule

The "legislative history" of a Maryland Rule can consist of a number of items:

- The original and amended versions of the particular rule.

---

[24] "Directive", *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/directive, available at https://perma.cc/4APK-JWPB.

- The record of any deliberations of the Court of Appeals at the open meeting at which the rule was considered and after which the Court adopted the rule.

- Committee Notes of the Standing Committee of Rules of Practice and Procedure ("Rules Committee"),[25] as adopted by the Court of Appeals and codified with various versions of the particular rule.[26]

- Source Notes, published with a rule, that direct a reader to a predecessor rule or other source, if any, from which the rule was derived.

- Reports by the Rules Committee submitted to the Court of Appeals, which contain proposed rules, and the cover letters of the Chair of the Rules Committee explaining the purpose and design of the proposed rules.

- Reporter's Notes, which are not adopted by the Committee and are not regarded as an official interpretation of proposed rules but which convey to the Court some of the research and rationale behind proposed rules.

- Minutes of Rules Committee meetings and deliberations concerning its proposals and the reports and minutes of subcommittees and other committees appointed to address a particular subject.

A number of these items that exist concerning the Access Rules are instructive on the interpretation of subsection (f)(3).

---

[25] The Court of Appeals created the Rules Committee to assist the Court in the exercise of its constitutional rulemaking powers. Maryland Rule 16-701. The committee consists of judges, court officials, lawyers, and others with interest and expertise in the subject matter of court rules. *See Murphy,* 478 Md. at 342 n.3. The Rules Committee's minutes and reports referenced in this opinion can be found on its webpage on the Judiciary's website.

[26] A Rules Committee Note that is codified with a Rule has been approved by the Court of Appeals as part of its consideration of rules proposed by the Rules Committee. A codified note therefore provides an authoritative basis for construing the rule to which it is appended. *See, e.g., Murphy*, 478 Md. at 348 n.10; *State v. Walker*, 345 Md. 293, 317 (1997).

3. History of the Adoption of Subsection (f)(3)

If the exception stated in subsection (f)(3) can be difficult to apply, it can also be difficult to find. During the past seven years it has appeared under four different codifications – a fugitive provision never remaining long in the same location.

*2003 – Court Committee Report*

During the early 2000s, the Court of Appeals began a process for creating rules that would provide more specific guidance than the general common law or the PIA about public access to court records.[27] Near the end of that process, in late 2003, then-Chief Judge Robert M. Bell designated a three-judge committee of the Court of Appeals ("Court Committee") to draft a set of rules.[28] The Court Committee did so and issued a report with a proposed set of rules on November 13, 2003. Court Committee Designated to Develop Rules Regarding Public Access to Public Records, Recommendations to Court of Appeals (November 13, 2003) ("Court Committee Report").[29] The proposed rules in the Court Committee Report were the basis of the rules adopted shortly thereafter by the Court of Appeals. Nearly two decades later, most of the text of the current Access Rules can be traced to the draft rules recommended in the Court Committee Report.

---

[27] A webpage on the Judiciary website entitled "Committee on Access to Court Records" reflects the chronology of these events and contains links to the various committee reports: https://www.courts.state.md.us/access, available at https://perma.cc/DSL7-TMRD.

[28] The members of the committee were Chief Judge Bell, Judge Alan M. Wilner, and Judge Lynne A. Battaglia.

[29] Available at https://perma.cc/TYW2-N8FV.

In a preface to its recommended rules, the Court Committee noted that the PIA had been intended to "open up" records in the Executive Branch that had previously been shielded from public inspection; by contrast, "the courts have always been regarded as open to the public, and documents filed in court proceedings have historically been open to public inspection." Court Committee Report at 2. The Court Committee observed that rigid application of exceptions in the PIA to court records would result in the closing of records that historically had been open. *Id*.

The Court Committee Report classified judicial records into several categories, much as the current Access Rules do, and made clear the extent to which the PIA's exceptions from disclosure would apply to the different categories of judicial records. Pertinent to this case, the Court Committee Report proposed a definition of "administrative record" nearly identical to that in the Access Rules applicable to this case and indicated generally that the right to inspect administrative records would generally follow the principles set forth in the PIA. Court Committee Report at 5-6, 18.

The Court Committee also proposed an exception to disclosure for certain administrative records (denominated as proposed Rule 16-1004(e)(2)) that was essentially identical to that which appeared in subsection (f)(3) of the Access Rules applicable to this case and that currently appears in Maryland Rule 16-913(d). Court Committee Report at 23-24. The Court Committee Report explained the origin of that exception as follows: "There is no direct source for this exception. It follows, in a general way, the exception in [Maryland Code, State Government Article ("SG")] §10-618(b) for interagency and intra-

agency memoranda and is also intended to shield non-final drafts of memoranda." *Id*. At that time, SG §10-618(b) of the PIA provided a discretionary exception for "any part of an interagency or intra-agency letter or memorandum that would not be available by law to a private party in litigation with the unit" – an exception that is based on a similarly-worded exception in the federal Freedom of Information Act ("FOIA")[30] and that is frequently referred to as the "deliberative process privilege." The PIA exception is currently codified at GP §4-344.

> *2004 – Adoption by Court of Appeals of First Set of Access Rules*

The proposed rules in the Court Committee Report were referred to the Rules Committee's subcommittee on style, which made some minor revisions.[31] A final draft was then submitted to the Court of Appeals. The Court considered that draft at an open meeting on February 9, 2004. At that meeting, Judge Wilner presented the proposed rules on behalf of the Court Committee. He summarized the Court Committee Report and spotlighted various choices made by the Court Committee in drafting the rules. Of some relevance here, he indicated that most of the exceptions to disclosure in the proposed rules were drafted as mandatory rather than discretionary exceptions because the clerks – the custodians of many types of court records – and the news media – frequent requesters of

---

[30] 5 U.S.C. §552(b)(5).

[31] Among other things, the style subcommittee eliminated annotations in the Court Committee's Report concerning the origin or reasoning for inclusion of particular rules, including proposed Rule 16-1004, and, in lieu of those annotations, simply indicated in source notes that "This Rule is new."

28

court records – both preferred a regime that did not give the clerks discretion as to what records should be disclosed in response to a request. There was no specific discussion at the meeting of the exception in proposed Rule 16-1004(e)(2) – the predecessor of subsection (f)(3) at issue in this case.

A month later, the Court adopted the proposed rules, with some changes, as Chapter 1000 of Title 16. Rules Order (March 4, 2004). The Court adopted the proposed Rule 16-1004(e)(2) verbatim as the Court Committee had originally proposed it, except for non-substantive stylistic changes.

Also approved in the 2004 Rules Order was a Committee Note to new Rule 16-1001, which contained the definitions of the various categories of records. The Committee Note explained that the administrative records maintained by courts or judicial agencies "mostly involve[e] personnel, budgetary, and operational management, [and] are similar in nature and purpose to the kinds of administrative records maintained by Executive Branch agencies …. The Rules in this chapter treat those kinds of records more or less the same as comparable Executive Branch records."

*2016-17 – Recodification and Revision of Access Rules*

During 2016 and 2017, the Court re-codified the Access Rules and revised them in minor respects. *See* Rules Order (June 6, 2016) (rescinding Title 16 of Maryland Rules and adopting a new Title 16); Rules Order (June 20, 2017). The revisions continued the approach of classifying judicial records into defined categories and amended the definition of "administrative record" to include judicial education materials. The new codification of

the rule defining those categories retained the Committee Note from the original rules equating the category of administrative records to similar records in Executive Branch agencies. The exception to disclosure in former Maryland Rule 16-1004(e)(2) was re-codified, without substantive change, first as Maryland Rule 16-904(d)(3) and later as Maryland Rule 16-905(f)(3) – its codification at the time of the Abell records request. The recodifications and revisions undertaken in 2016 and 2017 also effected other changes in the Access Rules that are not relevant here.

*Summary*

It seems clear that both the 2003 Court Committee and the Court intended at the time that the Access Rules were first adopted that the presumption of disclosure in those rules would be at least as broad as that in the PIA; that the disclosure of the Judiciary's administrative records would generally follow the principles applicable to Executive Branch agency records under the PIA, with the PIA filling any gaps in the Access Rules; and that the particular exception set forth in subsection (f)(3) would protect the same sorts of pre-decisional records that the PIA exception in SG §10-618(b) – now codified at GP §4-344 – protected from disclosure.[32]

---

[32] There is a well-developed body of case law construing this PIA exception, as well as the parallel exception in the federal Freedom of Information Act. *See Stromberg Metal Works, Inc. v. University of Maryland*, 382 Md. 151, 161-67 (2004); *Governor v. Washington Post Co.*, 360 Md. 520, 550-53 (2000); *Cranford v. Montgomery County*, 300 Md. 759, 771-77, 784-85, 791 (1984); *see generally* Office of Attorney General, Public Information Act Manual (Sept. 2021) at pp. 3-34 through 3-38, available at https://www.marylandattorneygeneral.gov/OpenGov%20Documents/Chapter3.pdf (also available at https://perma.cc/K3E3-U9G7); Department of Justice, Guide to the Freedom of Information Act, *Exemption 5* (August 26, 2019), available at

As a threshold matter, GP §4-344 is a conditional exemption. To invoke it, a custodian must "believe[]" that the requested inspection "would be contrary to the public interest." GP § 4-343. Then, under GP §4-344, a custodian "may deny inspection of any part of an interagency or intra-agency letter or memorandum that would not be available by law to a private party in litigation with the unit." As relevant here, the exception imports into the PIA the common law protections for Executive Branch pre-decisional communications—an "interagency or intra-agency" communication—when that communication would fall within the deliberative process privilege.[33] *Office of the Governor v. Washington Post Co.*, 360 Md. 520, 551 (2000). There, in addressing the former SG §10-618(b), the Court explained that the exception "to some extent reflects that part of the executive privilege doctrine encompassing letters, memoranda or similar internal government documents containing confidential opinions, deliberations, advice or recommendations from one governmental employee or official to another official for the purpose of assisting the latter official in the decision-making function." *Id*. The purpose of the privilege is to encourage such employees and officials to give "completely candid advice by reducing the risk that they will be subject to public disclosure, criticism and reprisals," and to enable decisionmakers to "think out loud ... uninhibited by the danger

_____

https://www.justice.gov/oip/page/file/1197816/download (also available at https://perma.cc/9RS7-TURV); James T. O'Reilly, Federal Information Disclosure (June 2022 update), Chapter 15.

[33] GP § 4-344 also shields attorney work product.

that tentative but rejected thoughts will become the subject of public discussion." *Maryland Bd. of Physicians v. Geier*, 451 Md. 526, 567–68 (2017), quoting *Hamilton v. Verdow*, 287 Md. 544, 558 (1980) (quotation marks and citations omitted). Accordingly, the privilege does not apply when "the records sought to be protected patently do not represent the content of confidential communications of an advisory or deliberative nature." *Washington Post*, 360 Md. at 562.

Reading subsection (f)(3) to generally follow the PIA's deliberative process exception makes sense when it is viewed in the context of the other Access Rule provisions concerning the disclosure of administrative records. The challenge is to identify, in concrete terms, just what sort of record or information subsection (f)(3) sought to shield. Helpful to that inquiry are the examples of an "administrative record" provided in former Maryland Rule 16-902(a)(2). One such example is jury selection records. The exceptions applicable to those records are set forth explicitly in former Maryland Rule 16-905(c). Another example of administrative record given in former Maryland Rule 16-902(a)(2) is judicial educational materials, explicitly addressed in former Maryland Rule 16-905(f)(2); a third is judicial work product, explicitly addressed in former Maryland Rule 19-605(f)(1). Yet another example is "an analysis or report" that is "prepared by or for a court or court agency," used by it "for purposes of judicial administration," and neither filed nor required to be filed with the clerk. Former Maryland Rule 16-902(a)(2)(C). Those intra- or inter-agency documents, when not finalized into an order, policy, or directive, are the types of internal – and deliberative – documents that subsection (f)(3) was apparently intended to

protect.  Read otherwise, the exception in subsection (f)(3) would seem to apply to every administrative record that is not a formally-promulgated rule, policy, or directive.

4. Application to Abell's Request for the Code Key

Although the predecessor of GP §4-344 provided the inspiration for the predecessor of subsection (f)(3), the two exceptions are worded differently.  One difference reflects the preference of the drafters of the Access Rules for phrasing exceptions in mandatory terms.  Thus, subsection (f)(3) states that a custodian "shall deny" a request for the records within its purview, while the PIA provision states a conditional or discretionary exception.  That distinction, however, does not make a difference to the question of whether the code key contains information that subsection (f)(3) was intended to shield from public view.  The answer to that question is clearly "no."  The code key is just a list of names and codes.  It did not lead to or even precede a decision pertaining to its content; it did not reflect deliberations among Judiciary staff; it was not prepared as an internal report or analysis to aid a decisionmaker.  Because the code key "patently do[es] not represent the content of confidential communications of an advisory or deliberative nature," *Washington Post*, 360 Md. at 562, the exception stated in subsection (f)(3) does not apply to it.[34]

---

[34] Accordingly, contrary to the suggestion in the opinion of the Court of Special Appeals, *see* 252 Md. App. at 270 n.3, the disclosure of this record does not depend on whether the AOC has a memo or other record that governs the use of the edit table that contains the code key – a condition that, in some circumstances, could be difficult for a custodian to apply.

The difficulty with mandatory exceptions in records disclosure laws is that a custodian, mindful of the duty to adhere to them, may be inclined to read them literally and to use them as a checklist so as not to risk an improper and potentially injurious disclosure. That approach – beginning the process by looking for reasons to deny inspection – is understandable but does not square with the presumption that judicial records are to be available to the public. Subsection (f)(3) compounded the difficulty by stating in mandatory (and oblique) terms an exception that was intended to reflect the conditional exception in the PIA for the protection of "deliberative process" records.[35] With regard to judicial records, the custodian's best course is first to consider whether the requested document contains information that, as a matter of common sense, ought to be withheld for privacy or security reasons, and then to check it against the exceptions. In this case, there was no reason to withhold the code key, and, as the text and history of the Access Rules confirms, subsection (f)(3) did not require the custodian to do so.[36]

---

[35] In 2020, the Court added a new exception to the Access Rules that more closely tracks the exception in GP §4-344. *See* Maryland Rule 16-913(g); *see also* Rules Order (June 29, 2020). A new source note for Maryland Rule 16-913 explicitly references the PIA exception.

[36] A brief word on the two well-written dissenting opinions: Judge Hotten's opinion concludes that the code key is unambiguously covered by the mandatory exception in subsection (f)(3) – now Rule 16-913(d) – and that it therefore cannot be disclosed to Abell. For the reasons set forth in this opinion, we disagree with that analysis.

Judge Biran's dissenting opinion comes to a similar conclusion about the breadth of subsection (f)(3) as Judge Hotten's opinion. However, Judge Biran's opinion also suggests that, "outside of this case," a "new policy" be implemented, either by formal order of the Chief Judge or by some action of other officials, that results in the code key being made available to the public. The premise of the suggestion is that the undisclosed code key is

# III

## Conclusion

An important common law principle provides that court proceedings and records are presumptively open to the public. In the PIA, the General Assembly has established a policy that public records that are clearly disclosable should be made available for public inspection without unnecessary cost or delay. The Court's Access Rules, both in 2018 and now, reflect the principle of the openness of case records and generally treat administrative records in a way similar to that set by the PIA. Consistent with the principle of openness of case records and the policy of ready public access to records that are clearly disclosable, Case Search makes available online basic information about case records. There is no dispute that the identity of a judge who presided in a case or decided a matter is not confidential and is clearly disclosable under the PIA and Access Rules. That information apparently appears in Case Search in entries for case events in many courts, but not for the District Court in Baltimore City where the judge is indicated by an alphanumeric code.

We hold that the code key that matches alphanumeric codes in Case Search to the judges on the District Court in Baltimore City is disclosable in response to Abell's public records request and is not exempt from disclosure under the exception for certain

---

the manifestation of a current policy that should be reversed. This is a short distance, if any, from the premise of the opinions of the Circuit Court and Court of Special Appeals that the undisclosed code key embodied a policy and therefore was not subject to the exception in subsection (f)(3).

35

administrative records in Maryland Rule 16-905(f)(3), as it existed in July 2018 – or as it exists in current Maryland Rule 16-913(d).

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

Circuit Court for Baltimore City
Case No. 24-C-18-005684
Argued: April 4, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 48

September Term, 2021

———————————————————

ADMINISTRATIVE OFFICE OF THE
COURTS, ET AL.

v.

ABELL FOUNDATION

———————————————————

\*Getty, C.J.,
Watts,
Hotten,
Booth,
Biran,
Harrell, Glenn T., Jr.,
 (Senior Judge, Specially Assigned)
McDonald, Robert N.
 (Senior Judge, Specially Assigned)

JJ.

———————————————————

Dissenting Opinion by Hotten, J., which
Biran, J., joins.

———————————————————

Filed: July 28, 2022

\*Getty, C.J., now a Senior Judge, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of the majority opinion.

I respectfully dissent. As explained below, I cannot agree that Maryland Rule 16-905(f)(3)(B)(i) (*effective through* July 31, 2020)[1] permits Abell Foundation, Respondent, to access to the Edit Table. To conclude otherwise requires ignoring the plain language of the Rule and reading additional language into the Rule that does not appear in its text. This Court has repeatedly reiterated that neither practice is acceptable. The legislative intent behind the enactment of the Court Access Rules, Md. Rules 16-901 through 16-934, does not compel a different result. While the majority applied a nuanced analysis of the Maryland Rules that weighed the competing objectives of general transparency and specific record confidentiality, this analysis cannot supersede the plain meaning of the rule. I would reverse the decision of the Court of Special Appeals and hold that the Administrative Office of the Courts (together with Polly Harding, the Director of Administrative Services for the District Court of Baltimore City, "Petitioners") rightfully denied Respondent access to the Edit Table.

## General Principals of Statutory Interpretation

Central to the present controversy is the proper interpretation of Maryland Rule 16-905(f)(3)(B)(i). As such, it is helpful to revisit the principles to which this Court adheres when interpretating the Maryland Rules. *See Hurst v. State*, 400 Md. 397, 417, 929 A.2d 157, 168 (2007).

> With respect to the interpretation of the Maryland Rules, this Court has stated that the canons and principles which we follow in construing statutes apply equally to an interpretation of our rules. In order to effectuate the purpose and objectives of the rule, we look to its plain text. To prevent

---

[1] The parties' dispute is based on the Court Access Rules in effect in 2019, when the dispute took place.

illogical or nonsensical interpretations of a rule, we analyze the rule in its entirety, rather than independently construing its subparts. *If the words of the rule are plain and unambiguous, our inquiry ordinarily ceases and we need not venture outside the text of the rule.*

*Tierco Maryland, Inc. v. Williams*, 381 Md. 378, 396, 849 A.2d 504, 515 (2004) (emphasis added) (quoting *Bern–Shaw Ltd. [P'ship] v. Mayor of Baltimore*, 377 Md. 277, 297–98, 833 A.2d 502, 514 (2003)).

While our primary goal in interpretating a statute or rule is to ascertain the intent of the legislature, we have explained that "all statutory interpretation begins, and usually ends, with the statutory text itself" because the "intent of a statute [or rule] primarily reveals itself through the statute's [or rule's] very words[.]" *Price v. State*, 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003); *see also Blackstone v. Sharma*, 461 Md. 87, 113, 191 A.3d 1188, 1203 (2018) ("We assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly."). "Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Schreyer v. Chaplain*, 416 Md. 94, 101, 5 A.3d 1054, 1058 (2010); *see also Gillespie v. State*, 370 Md. 219, 222, 804 A.2d 426, 427 (2002) ("We view the words of a statute in ordinary terms, in their natural meaning, in the manner in which they are most commonly understood[.]"). "If the plain language of the statute is clear and unambiguous, the process ends and 'no further sleuthing of statutory interpretation is needed.'" *Fisher v. E. Corr. Inst.*, 425 Md. 699, 706–07, 43 A.3d 338, 343 (2012) (citing *Breslin v. Powell*, 421 Md. 266, 287, 26 A.3d 878, 891

(2011)); *see also In re Gloria H.*, 410 Md. 562, 579–80, 979 A.2d 710, 720 (2009).

Essentially, "[w]e neither add nor delete words to an unambiguous statute in an attempt to

extend the statute's meaning." *Gillespie*, 370 Md. at 222, 804 A.2d at 427.

It is "[w]hen the words of the statute are ambiguous, we resolve the ambiguity using

a wider range of interpretive aids, including legislative history, prior case law, statutory

purpose and statutory structure." *Fisher v. E. Corr. Inst.*, 425 at 707, 43 A.3d at 343.

> The ambiguity that prompts our use of these aids can arise when the words of the section at issue themselves are subject to more than one reasonable interpretation, and therefore do not clearly disclose the legislative intention[.] Ambiguity may also arise when the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme. In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

*Id.*, 43 A.3d at 343 (internal citations and quotations omitted). Finally, "we are guided by

the presumption that 'the Legislature intends its enactments to operate together as a

consistent and harmonious body of law, such that no part of the statute is rendered

meaningless or nugatory.'" *Id.*, 43 A.3d at 343.

**Analysis**

Respondent contends that it is entitled to access a document referred to as an "Edit

Table" under Maryland Rule 16-905(f)(3)(B)(i).[2] The Edit Table is a document maintained

by Petitioners that contains a list of three-digit alphanumeric identifiers that correspond to

each judge in the District Court for Baltimore City. The three-digit identifiers are used on

---

[2] The majority refers to the Edit Table as a "code key" to translate the name of the desired document into a more easily understandable term. For consistency with the record, I will continue to use the term Edit Table.

the Maryland Judiciary Case Search website, an online platform that provides certain information pertaining to Maryland state case records to the public.[3]  For District Court cases in Baltimore City, Case Search lists the alphanumeric identifiers in lieu of the District Court judge's name.  Although a translation key for other abbreviations used on Case Search is available on the site, neither the Edit Table nor the information contained therein are available to the public.

Maryland Rule 16-905(f)(3) provides:[4]

(f) **Certain Administrative Records**.  A custodian shall deny inspection of the following administrative records:

\* \* \*

(3) an administrative record that is:

(A) prepared by or for a judge or other judicial personnel;

---

[3] *See Case Search – Frequently Asked Questions*, MARYLAND COURTS, https://mdcourts.gov/casesearch2/faq, archived at https://perma.cc/J4VJ-KESB ("Case Search provides Internet access to information from Maryland case records as described in the Maryland Rules on Access to Court Records (Rules 16-901 through 16-912; 1-322.1)).

[4] The then-applicable Maryland Rule 16-905(f)(3) has since been recodified as Md. Rule 16-913(d), which states as follows:

**(d) Administrative Record Prepared by or for a Judge or Other Judicial Personnel.**  A custodian shall deny inspection of an administrative record that is:
(1) prepared by or for a judge or other judicial personnel;
(2) either (A) purely administrative in nature but not a local rule, policy, or directive that governs the operation of the court or (B) a draft of a document intended for consideration by the author or others and not intended to be final in its existing form; and
(3) not filed with the clerk and not required to be filed with the clerk.

The relevant substance and language of the Rule has not changed since is recodification.

4

(B) either (i) *purely administrative in nature but not a local rule, policy, or directive that governs the operation of the court* or (ii) a draft of a document intended for consideration by the author or others and not intended to be final in its existing form; and

(C) not filed with the clerk and not required to be filed with the clerk.

(Emphasis added). Under Maryland Rule 16-905(f)(3)(B)(i), purely administrative records are generally not disclosable, unless they can be categorized as a "local rule, policy, or directive that governs the operation of the court." As explained below, the Edit Table does not fall within any of those delineated exceptions.

Respondent concedes the Edit Table cannot be categorized as a "rule[,]" but asserts that it may either be categorized as a "policy" or "directive" governing the operation of the court. An inquiry into the meaning of Maryland Rule 16-905(f)(3)(B)(i) begins with the plain language of the rule itself, and where a term is not otherwise defined in the statutory scheme, "popular understanding of the English language dictates interpretation of its terminology." *Schreyer*, 416 Md. at 101, 5 A.3d at 1058. Neither "policy" nor "directive" is specifically defined in the Court Access Rules, so we begin to the dictionary definitions of those terms. *Minh-Vu Hoang v. Lowery*, 469 Md. 95, 120, 228 A.3d 1148, 1163 (2020).

The Merriam-Webster dictionary defines "policy" as "a definite course or method of action selected from among alternatives and in light of given conditions to guide and determine present and future decisions" or "a high-level overall plan embracing the general goals and acceptable procedures especially of a governmental body[.]" *Policy*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/policy, archived at https://perma.cc/EB5G-JJ7L. Similarly, the Cambridge Dictionary defines "policy" as "a

5

set of ideas or a plan of what to do in particular situations that has been agreed to officially by a group of people, a business organization, a government, or a political party[.]" *Policy*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/policy, archived at https://perma.cc/73E8-U48; *see also Policy*, OXFORD LEARNERS DICTIONARY, https://www.oxfordlearnersdictionaries.com/us/definition/american_english/policy, archived at https://perma.cc/75E9-YLKJ (defining "policy" as "plan of action agreed or chosen by a political party, a business, etc.").

The Edit Table does not fall within any of these definitions of "policy". Common to each of these definitions is the explanation that a "policy" refers to something that dictates a plan of action or provides guiding principles as to how to act should certain circumstances arise. The parties do not dispute that the Edit Table is a list of three-digit alphanumeric identifiers corresponding to each judge in the District Court for Baltimore City. It offers no plan of action or guiding principles, nor does it dictate that anyone to do or not do anything the information it contains. It does not itself mandate the alphanumeric identifiers be provided to the public in place of the names of the Baltimore City District Court judges. The Edit Table simply translates the meaning behind specific codes, without providing any directions as to how such information is to be used.

For similar reasons, the Edit Table cannot be said to fall within the plain meaning of "directive." In a brief survey of various popular dictionaries, "directive" is consistently defined as a type of official order or instruction. *See Directive*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/directive, archived at https://perma.cc/T5N7-HKEP (defining "directive" as "something that serves to direct,

guide, and usually impel toward an action or goal" specifically for, "government: an authoritative order or instrument issued by a high-level body or official[.]") (emphasis removed); *Directive*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/directive archived at https://perma.cc/WWL4-ASNN (defining "directive" as "an official instruction or order"); *Directive*, OXFORD LEARNERS DICTIONARY, https://www.oxfordlearnersdictionaries.com/us/definition/english/directive_1, archived at https://perma.cc/HYN4-R9L7 (defining "directive" as "an official instruction"). As discussed above, the Edit Table contains no order or instruction for how, where, or in what manner it is to be used; it is nothing more than a list of coded identifiers that correspond to a list of names.

In fact, both the circuit court and the Court of Special Appeals in this case conceded in their respective opinions that the Edit Table, itself, was not a policy or directive. In its memorandum opinion, the circuit court stated the following regarding the Edit Table:

> It is easier and potentially more accurate for personnel in the various clerk's offices to enter these codes rather than to type in the names of individual judges. That is a uniform administrative practice of the District Court – part of its administrative policies and directives – and the [E]dit [T]able itself is an integral part of implementing that policy or directive. [Maryland] Rule 16-905(f)(3) excludes this policy and directive from those administrative records for which inspection must be denied.

The practice of using codes in place of judge's names was the "policy or directive" identified by the circuit court, and the Edit Table was merely "an integral part of implementing that policy or directive[,]" but not the "policy or directive" itself.

7

The Court of Special Appeals described the Edit Table in a similar way. It explained that the Edit Table

> enacted [Petitioners'] policy not to identify District Court judges by name on Case Search. As the custodian explained in her affidavit, the Edit Table was an integral part of implementing [Petitioners'] administrative policies and directives. . . . The Edit Table may not state the words of the policy or directive itself, but it embodies and enables [Petitioners'] policy decision to display the codes on Case Search rather than the names of the judges.

*Admin. Off. of the Cts. v. Abell Found.*, 252 Md. App. 261, 269, 258 A.3d 998, 1003, *cert. granted sub nom. Admin. Off. of Cts. v. Abell Found.*, 476 Md. 584, 264 A.3d 1283 (2021). Later in its opinion, the Court of Special Appeals, again, stated

> *there is no document or record stating [Petitioners'] policy not to identify District Court judges by name on Case Search.* That policy exists only in the documents or records that enable or implement it. But [Petitioners'] reading of [Md.] Rule 16-905(f)(3)(B)(i) would limit its obligation to the records expressly stating any local rules, policies, or directives; applied as [Petitioners] argue[] we should, [Petitioners] [sic] would respond to a request for this policy and the records implementing it with nothing. Where, as here, the Edit Table is the only tangible manifestation of the policy, the universe of records subject to mandatory denial under [Petitioners'] construction of the Rule is limited in a way that is inconsistent with its text and meaning within the Rules as a whole and the overall scheme.

*Id.* at 270, 258 A.3d at 1003 (emphasis added). Agreeing with the circuit court, the Court of Special Appeals concluded the Edit Table was not actually a policy or directive, but instead something that "implement[ed,]" "embodie[d,]" "enable[d,]" or was the "tangible manifestation" of what it identified as the actual policy or directive: "to display the codes on Case Search rather than the names of judges." *Id.* at 269, 270, 258 A.3d at 1003.

Maryland Rule 16-905(f)(3)(B)(i) does not require disclosure of purely administrative documents that implement, embody, enable, or manifest a policy or

8

directive; it requires disclosure of purely administrative documents that *are* policies or directives. Nowhere does the policy identified by the courts below appear on the Edit Table itself. The Court of Special Appeals revealingly stated in a footnote that "[i]f on the other hand, there had been a memo or some other tangible manifestation of the policy, the Edit Table might well be subject to mandatory denial on this basis." *Admin. Off. of the Cts. v. Abell Found.*, 252 Md. App. at 270 n.3, 258 A.3d at 1003 n.3. Policies and directives may be written or unwritten; nowhere do the Court Access Rules permit access to all documents used to carry out policy, simply because the policy itself does not appear in a written form.

To reach the conclusion proffered by Respondent, a basic tenet of our statutory interpretation principles must be ignored, namely, that "[w]e *neither add nor delete* words to an unambiguous statute in an attempt to extend the statute's meaning." *Gillespie*, 370 Md. at 222, 804 A.2d at 427 (emphasis added). This tenet is central to our approach to statutory interpretation evidenced by its appearance four times already in cases published within this term. *See Mayor & City Council of Baltimore v. Thornton Mellon, LLC,* No. 6, Sept. Term, 2021, 478 Md. 396, 428-429, 274 A.3d 1079, 1098 (2022), (Md. Apr. 28, 2022); *Howling v. State*, No. 35, Sept. Term, 2021, 478 Md. 472, 498, 274 A.3d 1124, 1135-1139 (2022), (Md. Apr. 28, 2022); *Dejarnette v. State*, 478 Md. 148, 162, 272 A.3d 376, 384 (2022); *Pabst Brewing Co. v. Frederick P. Winner, Ltd.*, 478 Md. 61, 74, 272 A.3d 324, 332 (2022). Neither Respondent nor the courts below assert that the terms "policy" or "directive[,]" as they appear in Maryland Rule 16-905(f)(3)(B)(i), have multiple reasonable meanings as to constitute ambiguous terms or are ambiguous when the Court Access Rules are viewed as a whole. *See Fisher*, 425 Md. at 707, 43 A.3d at 34.

9

Respondent's interpretation requires reading Md. Rule 16-905(f)(3)(B)(i) to state that a custodian shall deny access to documents that are "purely administrative in nature but not a local rule, policy, or directive that governs the operation of the court" *or* implement, embody, enable or manifest a local rule, policy or directive governing the operation of the court. Our guiding principles of statutory interpretation forbid judicially imposing the latter phrase into the unambiguous text of the Rule where it does not otherwise appear.[5]

Petitioners are also correct to critique the Court of Special Appeals for focusing on the phrase "govern[ing] the operation of the court" in coming to its conclusion that the Respondent was entitled to access of the Edit Table. *See Abell Found.*, 252 Md. App. at 268, 258 A.3d at 1003. In coming to its conclusion, the Court of Special Appeals asserted Petitioners' focus in the necessity of the existence of a "policy" and "directive[,]"

> leaves out the last part of the operative sentence, which is where the circuit court parted company with [Petitioners], and where we part as well. Subsection (f)(3)(B)(i) requires the custodian to deny inspection of records that are 'purely administrative in nature but not a local rule, policy, or directive *govern[ing] the operation of the court*[.]' ([E]mphasis added) . . . The Edit Table may not state the words of the policy or directive itself, but it embodies and enables [Petitioners'] policy decision to display the codes on Case Search rather than the names of the judges. In that sense, then, the Edit Table serves as a policy or directive that "govern[s] the operation of the court," and therefore is not within the universe of documents the custodian is required to withhold.

---

[5] It is equally impermissible to stretch the meaning of terms. *Bourgeois v. Live Nation Entertainment, Inc.*, 430 Md. 14, 41 n.27, 59 A.3d 509, 525 n.27 (2013) ("Courts must apply the law as they find it and, to be true to the established rules of statutory construction, may not unduly stretch it to reach what they may perceive to be a more convenient result.").

*Id.* at 269, 258 A.3d at 1003 (quoting Md. Rule 16-905(f)(3)(B)(i)). The phrase, "that governs the operation of the court" is a dependent cause that is meaningless if it does not modify a particular object. Without a "local rule, policy, or directive" to modify, the phrase "that governs the operation of the court" has no meaning. Alternatively, the Court of Special Appeals had to artificially add the terms "embodies and enables" to reach its conclusion that the Rule mandated Respondent be granted access to the Edit Table.

While it is not necessary to delve into the legislative intent behind the unambiguous language in Md. Rule 16-905(f)(3)(B)(i), *see Stanley v. State,* 390 Md. 175, 185, 887 A.2d 1078, 1084 (2005) ("[W]hen the language of the statute is clear and unambiguous, 'the resort to legislative history is a confirmatory process; *it is not undertaken to contradict the plain meaning of the statute*[.]'") (emphasis added) (quoting *Mayor and City Council of Baltimore v. Chase*, 360 Md. 121, 128, 756 A.2d 987, 991 (2000)), doing so does not compel a different result. In a report dated November 17, 2003 to the Court of Appeals, the judicial committee created a draft of the Court Access Rules to recognize that although there is a general inclination towards openness of judicial records, "the public's right to access judicial records is not absolute and the courts may deny access when and to the extent that such access may intrude on equally important rights." CT. COMM. REGARDING PUB. ACCESS TO JUD. RECS., RECOMMENDATIONS TO THE CT. OF APPEALS 3 (2003), https://www.mdcourts.gov/sites/default/files/import/access/rule16_1001wtestimony.pdf, archived at https://perma.cc/AYS8-7ZAD. In a note explaining the general policy provision of the Court Access Rules, the committee recognized

11

the common law right, articulated as well in the [M]PIA, of agencies to place reasonable procedural limitations on access to and copying of their records – limitations that take into account the need to protect the records from theft, alteration, or destruction as well as the operational efficiency of the agency and the fact that employees have other duties to perform.

*Id.* at 13. The plain and unambiguous language of Maryland Rule 16-905(f)(3)(B)(i) demonstrates that the committee chose to strike a balance between a policy of openness in judicial records and the integrity of agency operations by forbidding public access to any purely administrative record that "does not constitute a local rule, or a policy or a directive that governs the operation of the court[.]" *Id.* at 23; *see also Price*, 378 Md. at 387, 835 A.2d at 1226 ("[T]he legislative intent of a statute primarily reveals itself through the statute's very words[.]").

The Majority dedicates much of its opinion to this balance, and sympathetically examines the dilemma faced by the custodian of records in navigating, what appears to be in this case, competing objectives of the rule. But as acknowledged by the Majority, the Maryland Rules are precise rubrics, and Md. Rule 16-905(f)(3)(B)(i) unambiguously requires a records custodian to deny all documents "purely administrative in nature[.]" Holding that the Rule permits access, not only to any administrative document that is a "local rule, policy, or directive that governs the operation of the court[,]" but also to any administrative document that can be said to implement, embody, enable, or manifest such rules, policies, or directives, could practically result in public access to all purely administrative documents maintained by judiciary personnel. It is unlikely that there exists any purely administrative document maintained or utilized by judicial personnel that can be said to not implement, embody, enable, or manifest *some* local rule, policy, or directive

12

governing the operation of the court. The principle of denying the Edit Table in this case may seem unnecessary given the practical ability of any party to obtain the Edit Table with some legwork, but the principle in this case preserves the practical balance between general transparency and select record sensitivity preserved in the Maryland Rules and to be applied in future cases.

The practical result of viewing the Edit Table as a policy or directive renders meaningless Maryland Rule 16-905(f)(3)(B)(i)'s main operative provision, that generally the custodian is to deny inspection to all purely administrative documents. Again, the principles guiding this Court's approach to statutory interpretation do not condone such a result. *See Hollingsworth v. Severstal Sparrows Point, LLC*, 448 Md. 648, 659, 141 A.3d 90, 96–97 (2016) ("Our canons of statutory interpretation, however, forbid us to 'construe a statute . . . so that [a] word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory.'") (quoting *Oglesby v. State*, 441 Md. 673, 687, 109 A.3d 1147, 1155 (2015)).

## Conclusion

As the Edit Table is purely an administrative document that cannot be categorized as a "local rule, policy, or directive that governs the operation of the court" under Maryland Rule 16-905(f)(3)(B)(i), I conclude Petitioners were permitted to deny Respondent access to it. To reach the opposite result, a party must read into the unambiguous language of the Rule terms that do not appear in its plain text. Such an interpretation is not permitted under this Court's long-standing approach to statutory interpretation. The legislative intent

behind the Court Access Rules and competing objective of general transparency of public records do not compel a different result.

Respectfully I dissent and would reverse the judgment of the Court of Special Appeals.

Judge Biran has authorized me to state that he joins this opinion.

Circuit Court for Baltimore City
Case No. 24-C-18-005684
Argued: April 4, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 48

September Term, 2021

_____

ADMINISTRATIVE OFFICE OF
THE COURTS, ET AL.

v.

ABELL FOUNDATION

_____

*Getty, C.J.
Watts
Hotten
Booth
Biran
Harrell, Glenn T., Jr.
   (Senior Judge, Specially Assigned)
McDonald, Robert N.
   (Senior Judge, Specially Assigned),

JJ.

_____

Dissenting Opinion by Biran, J.,
   which Hotten, J., joins.

_____

Filed: July 28, 2022

*Getty, C.J., now a Senior Judge, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of the majority opinion.

Respectfully, I dissent. In the course of ordering Petitioner Administrative Office of the Courts ("AOC") to produce the District Court's code key (also referred to as an "edit table") to Respondent Abell Foundation ("Abell"), the Majority Opinion effectively amends the Access Rules governing disclosure of judicial records. It narrows the scope of the disclosure exception that governs "purely administrative" records, in spite of the plain language of the applicable rule. And the Majority Opinion effectively instructs Judiciary records custodians to treat all mandatory disclosure exceptions as discretionary. This Court has the authority to make these changes to the Access Rules, but it should not do so in a way that violates principles of statutory construction, and it should not do so without first obtaining the input of the AOC, media organizations, and other stakeholders by going through the rulemaking process.

I would hold that the records custodian properly denied Abell's disclosure request. However, that does not mean that I believe the identities of the District Court judges who preside over particular cases in Baltimore City should be difficult for the public to access. Outside of this case, the Court should take the steps necessary to make public the information that is contained in the code key.

**I**

As Judge Hotten has cogently explained in her Dissenting Opinion, the Majority Opinion violates consistently applied rules of statutory interpretation by disregarding the

plain language of former Maryland Rule 16-905(f)(3).[1] The code key at issue in this case is not a policy or a directive that governs the operation of the court (nor, of course, is it a local rule). As the code key is purely an administrative record,[2] and is none of the things that subsection (f)(3) exempts from mandatory withholding, the denial of disclosure of the code key indeed is mandatory.

The Majority Opinion reaches the same result as the circuit court and the Court of Special Appeals, but through different reasoning. Unlike the lower courts, the Majority does not hold that the code key is a policy that governs the operation of the court.[3] Rather,

---

[1] In keeping with the Majority Opinion's convention, I will generally refer to the disclosure exception at issue in this case as "subsection (f)(3)," a short form of former Maryland Rule 16-905(f)(3), because that is where the exception was codified when Abell made its disclosure request. As discussed below, subsection (f)(3) is now found at Maryland Rule 16-913(d).

[2] The Majority Opinion comes close to saying that the code key is a "case record," but stops short of what would be an erroneous characterization. *See* Maj. Op. at 20 n.21. Under former Maryland Rule 16-902(c)(1)(A), a "case record" is something that is "made, entered, filed, or maintained by the clerk of a court in connection with *an action or proceeding*." (Emphasis added.) The code key is not made, entered, filed, or maintained in connection with any particular action or proceeding.

[3] Although the Majority avoids the error that the lower courts made in holding that the code key must be disclosed as a "policy," I disagree with the Majority's view that whether the code key is a "policy" is a "much closer question" than whether it is a "directive." Maj. Op. at 23-24. It is equally clear that the code key is neither a directive nor a policy. It is not a directive because it does not instruct Judiciary staff to do anything. And it is not a policy because it is not a "procedure considered expedient, prudent or advantageous" or a "procedure based primarily on material interest" or a "method of action selected from among alternatives … to guide present and future decisions." Maj. Op. at 24 (quoting dictionary definitions of "policy"). The code key merely correlates alphanumeric codes with judges' names. If someone with no familiarity with this case were given a copy of the code key, that person would not learn from reviewing it that there is a procedure in the District Court of Maryland sitting in Baltimore City to use alphanumeric codes in place

the Majority states that, while the dictionary definitions of "policy" "are somewhat informative on what subsection (f)(3) might ordinarily mean, they do not establish a clear meaning of the word 'policy' as applied to the code key[.]" Maj. Op. at 24. Having arrived at that conclusion, the Majority then explains that it must "look more broadly to the purpose and history of subsection (f)(3) – and the Access Rules of which it is a part." Maj. Op. at 24. After conducting that analysis, the Majority Opinion suggests that the mandatory exception to disclosure contained in subsection (f)(3) should not be "read … literally," because doing so would seemingly render the exception applicable "to every administrative record that is not a formally-promulgated rule, policy, or directive." *See* Maj. Op. at 33-34. The Majority Opinion eschews a literal reading of subsection (f)(3) because: (1) such a reading "does not square with the presumption that judicial records are to be available to the public"; and (2) the plain language of the Rule is inconsistent with the actual intent of the Court when it promulgated the Rule, which was "to reflect the conditional exception in the [Public Information Act] for the protection of 'deliberative process' records." Maj. Op. at 34.

As an initial matter, I do not understand how the word "policy," as used in subsection (f)(3), could "ordinarily" mean one thing when considering some administrative records, but have a different meaning "as applied to" other administrative records.

_____

of judges' names in Maryland Judiciary Case Search entries. In contrast, if someone with no knowledge of the Judiciary's policy concerning, for example, employment of relatives was to read the document that states that policy, *see* Maryland Judicial Branch Policy on Employment of Relatives, available at https://perma.cc/DFV3-9BW5, that person would then know how the Judiciary handles employment of relatives.

- 3 -

"Policy," as used in this provision of the Access Rules, has one consistent meaning. Based on that meaning, a particular record either is or is not a "policy."

Putting aside my doubts about the Majority's justification for looking "more broadly to the purpose and history of subsection (f)(3) – and the Access Rules of which it is a part," Maj. Op. at 24, I find neither of the Majority's grounds for disclaiming a literal reading of subsection (f)(3) to be persuasive.

The Majority's invocation of the presumption of openness of judicial records merely begs the question: to what extent did this Court decide that the presumption should not apply to "purely administrative records" when it promulgated subsection (f)(3)? Clearly, the Court decided that not all purely administrative records should be disclosed upon request. But where did the Court intend to draw the line? In my view, the plain language of subsection (f)(3) answers that question, and there is no need to consult any other source.

Even if we do consider the text and history of the Access Rules, we end up at the same place. Although the presumption of openness applies both to case records and to administrative records, the exceptions to disclosure are much narrower for the former than for the latter. This is readily apparent when one reviews former Maryland Rule 16-906, which provides very few grounds for a custodian to deny access to a case record, with former Maryland Rule 16-905, which contains many more exceptions to disclosure of administrative records.

The three-member Court Committee (the "Committee") that recommended adoption of the initial Access Rules in 2003 explained the "different approach" that the Committee proposed for case records ("those that come into the court's possession as the

result of their having been filed by litigants in judicial actions") compared with administrative records: as to case records, "the exceptions to public access … for the most part, are much narrower. Categorical exceptions are limited to those that (1) have an existing basis, either by statute other than the PIA, or by specific Rule, or (2) present some compelling need for non-access." Court Committee Designated to Develop Rules Regarding Public Access to Court Records, Recommendations to the Court of Appeals, Nov. 17, 2003, at 9-10 ("Committee Recommendations"); *see also id.* at 9 (explaining that "[t]he premise of these Rules is that, although the presumption of openness applies to" case records and administrative records (as well as to notice and license records), these categories of records "need to be treated differently in some respects").

In my view, the Majority goes astray by failing to fully appreciate that the presumption of openness does not apply equally to case records and administrative records. If we were concerned here with a broadly worded exception to disclosure of case records, the longstanding principle of the openness of case records might provide a reasonable basis to conclude that the exception should be interpreted more narrowly than its language appeared to suggest. However, we need not view the exception to disclosure of purely administrative records set forth in subsection (f)(3) with such a jaundiced eye, given that this Court has already recognized that the presumption of openness is more easily overcome when the records at issue are administrative. In short, the presumption of openness is not a sufficient reason to ignore the plain language the Court used when it promulgated subsection (f)(3).

Of more substance is the Majority's point that subsection (f)(3) was intended to withhold only "deliberative process" records. However, upon review, that contention also misses the mark.

The exception contained in subsection (f)(3) was originally proposed in 2003 to be Maryland Rule 16-1004(e)(2). The Committee proposed the following language for this provision, with accompanying commentary:

> (e) A custodian shall deny inspection of the following administrative records:
>
> ….
>
> (2) An administrative record that is:
> (A) prepared by or for a judge or other judicial personnel;
> (B) either purely administrative in nature but does not constitute a local rule or a policy or directive that governs the operation of the court or is a draft of a document intended for consideration by the author or others and not intended to be final in its existing form; and
> (C) not filed with the clerk and not required to be filed with the clerk.
>
> SOURCE: There is no direct source for this exception. It follows, in a general way, the exception in Md. Code, SG, § 10-618(b) for interagency and intra-agency memoranda and is also intended to shield non-final drafts of memoranda.

Committee Recommendations at 23-24.

State Government Article § 10-618(b), the PIA exception that the Committee referenced, not as a direct source, but as the inspiration for proposed Rule 16-1004(e)(2), provided:

> Interagency and intra-agency documents.—A custodian may deny inspection of any part of an interagency or intra-agency letter or memorandum that would not be available by law to a private party in litigation with the unit.

Maryland Code Ann., State Gov't (SG) § 10-618(b) (1984, 1999 Repl.).  As the Majority Opinion explains, this PIA exception[4] is based on a similarly-worded exception – commonly referred to as exemption five – in the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(5), which protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." Discussing this exemption, the Supreme Court recently stated: "As the text indicates – albeit in a less-than-straightforward way – this exemption incorporates the privileges available to Government agencies in civil litigation. That list includes the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, ___ U.S. ___, 141 S. Ct. 777, 785 (2021). The Majority Opinion focuses on the deliberative process privilege component of SG § 10-618(b).

A comparison of SG § 10-618(b) and subsection (f)(3) reveals that the two provisions are worded in materially different ways. While SG § 10-618(b) applies to an "interagency or intra-agency letter or memorandum," subsection (f)(3) does not limit its application to letters, memoranda, or other communications. Rather, subsection (f)(3) covers "purely administrative records," which includes many kinds of records in addition

---

[4] I will cite to the interagency and intra-agency documents exception as "SG § 10-618(b)" (or simply § 10-618(b)) because this exception (and the rest of the PIA) was part of the State Government Article at the time this Court promulgated the original Access Rules. The PIA is no longer contained in the State Government Article, but rather can be found at Title 4 of the Maryland Code's General Provisions ("GP"). The interagency/intra-agency documents exception that was previously codified at SG § 10-618(b) is now located at GP § 4-344.

to communications. Moreover, unlike SG § 10-618(b), subsection (f)(3) does not explicitly or implicitly incorporate or otherwise refer in any way to the deliberative process privilege or to any other privilege. Thus, subsection (f)(3) – based on its plain language – does not exempt only privileged communications from disclosure.

The unstated rationale of the Majority Opinion seems to be that the Committee, in proposing what became subsection (f)(3), and this Court, in adopting the Committee's recommendation, intended to exempt only privileged administrative records from disclosure, but mistakenly used broad language that did not refer to the deliberative process privilege or to any other privilege. I cannot subscribe to that assessment. This Court's rulemaking process was in 2003, and is now, an exacting one. The judges who comprised the Court when the Access Rules were first adopted were experts in statutory construction who chose their words carefully. If those judges had intended to limit application of the exception that became subsection (f)(3) to records that were covered by the deliberative process privilege and/or another privilege, they easily could have accomplished that by incorporating the language of SG § 10-618(b) into the Access Rules.

My view of the Court's intent gains support by comparing the examples of administrative records contained in former Rule 16-902(a)(2) with the exceptions to disclosure of administrative records set forth in former Rule 16-905(c) and (f). As the Majority's description of these provisions demonstrates, *see* Maj. Op. at 32-33, there is a symmetry between the definitional examples in subsection 16-902(a)(2) and the exceptions in subsections 16-905(c) and (f). For example, jury selection records are included as an example of a kind of administrative record in subsection 16-902(a)(2)(E). The exceptions

- 8 -

applicable to those records are included in subsection 16-905(c). Another example of an administrative record covered in the definitional section is judicial education materials. *See* former Md. Rule 16-905(a)(2)(D) ("judicial education materials prepared by, for, or on behalf of a unit of the Maryland Judiciary for use by Maryland judges, magistrates, or other judicial personnel"). The exception relevant to judicial education materials is former Rule 16-905(f)(2), which largely tracks the language of the definitional example, requiring a custodian to deny inspection of "judicial education materials prepared by, for, or on behalf of a unit of the Maryland Judiciary for use in the education and training of Maryland judges, magistrates, or other judicial personnel."

Most relevant here are the examples of administrative records set forth in subsection 16-902(a)(2)(A) through (C):

(A) a rule adopted by a court pursuant to Rule 1-102;
(B) an administrative order, policy, or directive that governs the operation of a court or judicial agency;
(C) an analysis or report, even if derived from judicial records, that is:
    (i)   prepared by or for a court or judicial agency;
    (ii)  used by the court or judicial agency for purposes of judicial administration; and
    (iii) not filed, and not required to be filed, with the clerk of a court.

Like jury selection records and judicial education materials, each one of the examples of administrative records contained in subsection 16-905(a)(2)(A) through (C) is addressed in some fashion in the exception provision at issue in this case, subsection (f)(3), using language that is very similar to that of the definitional provisions. With respect to

rules adopted by a court under Rule 1-102,[5] subsection (f)(3) tells custodians to produce local rules. Subsection (f)(3) similarly instructs custodians to turn over policies and directives that govern the operation of the court. Finally, subsection (f)(3) addresses the administrative records referenced in Rule 16-902(a)(2)(C). It requires custodians to withhold those records that are "purely administrative" and that are prepared by or for a court or judicial agency, and are not filed, and not required to be filed, with the clerk of a court.

This comparison of the definitional example of, and the exception relating to, administrative records makes clear that the Court's broad reference to "purely administrative" records in subsection (f)(3) was not a slip of the rulemaking pen. The broad exception to disclosure of "purely administrative records" that are prepared by or for a court or judicial agency, and are not filed, and not required to be filed, with the clerk of a court, correlates closely to the definitional example of administrative records that are "used by the court or judicial agency for purposes of judicial administration" and that are prepared by or for a court or judicial agency, and are not filed, and not required to be filed, with the clerk of a court.

Interestingly, subsection (f)(3) does not limit the "purely administrative" records subject to withholding only to those that are either a "report or analysis" within the meaning of the definitional example in former Rule 16-902(a)(2)(C). It appears that the Court

_____

[5] Maryland Rule 1-102 concerns circuit and local rules, and allows such rules to be adopted concerning court libraries, memorial proceedings, auditors, compensation of trustees in judicial sales, and appointment of bail bond commissioners and licensing and regulation of bail bondsmen.

understood it would be impossible to capture all the different kinds of administrative records in a short example in Rule 16-902(a)(2)(C), and therefore decided to use "report or analysis" for illustrative purposes when defining an "administrative record." But when it came time to stating the exception to disclosure of administrative records, the Court swept more broadly, requiring that *all* administrative documents that are not local rules, policies, or directives be withheld, provided that they are "purely administrative" and that they were prepared by or for a court or judicial agency, and are not filed, and not required to be filed, with the clerk of a court.

But even if we construed the exception in subsection (f)(3) to deny inspection of only "analys[e]s or report[s]" that are purely administrative, the exception still would be significantly broader than the interagency/intra-agency communication exception contained in SG § 10-618(b). An "analysis or report … that is used by the court or judicial agency for purposes of judicial administration" is not necessarily an "interagency or intra-agency" communication, nor is it necessarily part of any deliberative process or otherwise privileged. Put simply, the drafters of subsection (f)(3) created a disclosure exception that plainly goes beyond the exception contained in SG § 10-618(b).

The Committee's statement that it followed SG § 10-618(b) "in a general way" is a thin reed upon which to base this Court's determination that subsection (f)(3) does not mean what it plainly says. While SG § 10-618(b) may have been the starting point for the Committee's journey, and may have generally guided the itinerary, the Committee ultimately arrived at a different destination when it proposed what became subsection (f)(3).

Indeed, the Majority recognizes that, "[a]lthough [SG § 10-618(b)] provided the inspiration for the predecessor of subsection (f)(3), the two exceptions are worded differently." Maj. Op. at 33. Yet, the Majority declines to give effect to the different language that the Court used in subsection (f)(3), and instead concludes that the Court meant to deny inspection only of documents that could be withheld under SG § 10-618(b). In my view, the Majority places too much emphasis on the Committee's reference to SG § 10-618(b) in the commentary to the proposed exception that became subsection (f)(3). To say that one "generally" follows a path is to imply that one does not follow it in all respects. Certainly, subsection (f)(3) protects from disclosure many documents that also could be withheld under § 10-618(b). But, as discussed above, subsection (f)(3) went farther than § 10-618(b) in protecting administrative documents from disclosure. It is not clear from the Committee Recommendations why the Committee proposed an exception that was broader than SG § 10-618(b). What is clear, however, is that the Committee did not craft an exception that only covers "deliberative process" and/or otherwise privileged records.

If there was any doubt that subsection (f)(3) was not coextensive with SG § 10-618(b), this Court eliminated it when it amended the Access Rules in 2020. As part of those amendments, the Court added a discretionary interagency/intra-agency communications exception, but it retained the exception that previously was codified at subsection (f)(3). Thus, the exceptions relating to disclosure of administrative records (codified at Maryland Rule 16-913), in pertinent part, now read as follows:

# RULE 16-913. ACCESS TO ADMINISTRATIVE RECORDS

….

(d) **Administrative Record Prepared by or for a Judge or Other Judicial Personnel**. A custodian shall deny inspection of an administrative record that is:

    (1) prepared by or for a judge or other judicial personnel;

    (2) either (A) purely administrative in nature but not a local rule, policy, or directive that governs the operation of the court or (B) a draft of a document intended for consideration by the author or others and not intended to be final in its existing form; and

    (3) not filed with the clerk and not required to be filed with the clerk.

….

(g) **Interagency and Intra-agency Memoranda**. A custodian may deny inspection of all or any part of an interagency or intra-agency letter or memorandum that would not be available by law to a private party in litigation with the custodian or the unit in which the custodian works.

If, as the Majority contends, the subsection (f)(3) exception was intended to apply only to deliberative process and other privileged records, the Court would not have needed to amend the Access Rules specifically to include the same exception that existed in former SG § 10-618(b). Or, if the Court decided to make the exception discretionary and to tie it more explicitly to privileged records, the Court presumably would have added what is now Rule 16-913(g) and simultaneously deleted what is now Rule 16-913(d). The Court did not do so. Instead, the Court amended the exceptions in the Access Rules so that, at present, the exception that once was subsection (f)(3) and an exception virtually identical to SG § 10-618(b) now exist alongside one another in the rule governing access to administrative records. There is no reason why this Court would have included a mandatory

and a discretionary exception that both only apply to the same privileged communications. In other words, Rule 16-913(d) and its neighbor, Rule 16-913(g), must be intended to accomplish different things.[6] It follows that their forbears – subsection (f)(3) and SG § 10-618(b) – should not be regarded as covering the exact same territory.

If the Court believes that the mandatory exception currently contained in Rule 16-913(d) is too broad, the Court should ask the Rules Committee to consider making changes to Rule 16-913. The AOC and other interested parties would then be able to provide input and, if amendments to the Access Rules were proposed, this Court would consider them at a public hearing.

The Majority Opinion sidesteps the normal rulemaking process by effectively amending Rule 16-913 – and the Access Rules more generally – in this case. Not only does the Majority necessarily narrow the scope of what is now Rule 16-913(d); as I read the Majority Opinion, it advises custodians to treat *all* of the Access Rules' mandatory exceptions as discretionary:

> The difficulty with mandatory exceptions in records disclosure laws is that a custodian, mindful of the duty to adhere to them, may be inclined to read them literally and to use them as a checklist so as not to risk an improper and potentially injurious disclosure. That approach – beginning the process by looking for reasons to deny inspection – is understandable but does not square with the presumption that judicial records are to be available to the public…. With regard to judicial records, the custodian's best course is first to consider whether the requested document contains

---

[6] To the extent a record is not "purely" administrative, such that the custodian would not be required to deny inspection of all or part of the document under current Rule 16-913(d), the custodian now has the discretion to deny inspection of the record under Rule 16-913(g) if it is a communication that is covered by the deliberative process privilege, the attorney work product doctrine, or another applicable privilege.

information that, as a matter of common sense, ought to be withheld for privacy or security reasons, and then to check it against the exceptions.

Maj. Op. at 34.

This guidance to Judiciary custodians about how to apply the Access Rules is highly problematic in at least two respects. First, to the extent the Majority Opinion instructs a custodian to decline to apply a mandatory exception that, on its face, applies to a particular record,[7] the Majority Opinion directs the custodian to disregard a rule having the force of law. As far as I know, this kind of instruction is unprecedented.

Second, records custodians will be required to make subjective, "common sense" determinations about security and privacy concerns on a document-by-document basis. Not only will this be a much more labor-intensive and time-consuming process than screening responsive records for local rules, policies, and directives; it undoubtedly will result in various custodians making inconsistent determinations about the types of records that should be produced, and will lead to further controversy. Presumably for these reasons or other equally legitimate reasons, the Judiciary's clerks as well as media organizations asked the Court to make the exceptions mandatory when the Access Rules were first promulgated. *See* Maj. Op. at 28-29. Whether to change course and inject discretion into the process is a matter that should be taken up by the Rules Committee, with the input of the AOC, media organizations, and other stakeholders.

---

[7] I can think of no reason for the Majority to instruct a custodian to consult their common sense and determine whether there is a privacy or security reason to withhold a particular document before "checking" the exceptions, unless the Majority contemplates that there will be some instances in which custodians will produce records that are covered by a mandatory exception.

- 15 -

**II**

The Judiciary did not set out to erect roadblocks to the public learning which judges have presided over specific proceedings in the District Court sitting in Baltimore City. Given how the applicable technologies have developed, the District Court clerks have found it expedient to use alphanumeric codes when entering case events in Maryland Judiciary Case Search. It appears that practice will no longer be necessary after the Courts in Baltimore City have transitioned to the MDEC system. The question is, what do we do about this anomaly until then?

In my view, the answer is simple, and it does not involve violating rules of statutory interpretation and effectively amending the Access Rules without going through the rulemaking process. Outside of this case, we should take the steps necessary to make the information contained in the code key available to the public. The Chief Judge of this Court could issue an administrative order directing that each alphanumeric code, and the name of each judge associated with such code, be published on the District Court's website or otherwise be made easily accessible to the public. Alternatively, the appropriate Judiciary officials could adopt and implement a new policy to provide this information to the public.

**Conclusion**

For the reasons stated above and in Judge Hotten's Dissenting Opinion, I would reverse the judgment of the Court of Special Appeals.

Judge Hotten has authorized me to state that she joins this opinion.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/48a21cn.pdf